```
1   Edward Vincent King, Jr. (SBN 085726)
    Michael J. Higgins (SBN 151549)
2   KING & KELLEHER, LLP
    20 California Street, 7th Floor
3   San Francisco, California 94111
    Telephone: (415) 781-2888
4

5   Philip Scott Ryan (SBN 47112)
    LAW OFFICES OF PHILIP SCOTT RYAN
6   944 Union Street
    San Francisco, California 94133
7   Telephone: (415) 614-0859

8
    Attorneys for Plaintiffs
9   CSI CAPITAL MANAGEMENT, INC.,
    and LELAND FAUST
10
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CSI CAPITAL MANAGEMENT, INC., and LELAND FAUST, | Case No. _____ |
| Plaintiffs, | **COMPLAINT FOR SLANDER (Cal. Civil Code §47), UNLAWFUL BUSINESS PRACTICE (Cal. Bus. & Prof. Code §17200) AND INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGES** |
| vs. | |
| PRIM CAPITAL CORPORATION, PRIM ADVISORS, INC., and DOES 1 through 25. | |
| Defendants. | DEMAND FOR JURY TRIAL |

## PLAINTIFFS

Plaintiffs demanding a jury trial allege:

1. Leland Faust (hereinafter "Faust") is a highly-respected, nationally known and recognized principal of CSI Capital Management, Inc. Faust attended the University of California, Berkeley, where he graduated Phi Beta Kappa and with Honors in economics. He next attended Harvard Law School where he graduated cum laude and taught taxation. Faust

1

**COMPLAINT**
Case No. _____
LV\CSI\P-Complaint#2

next pursued private practice and became a partner in Taylor & Faust, recognized as one of the premier tax firms in San Francisco. Faust is a resident of San Francisco, California.

2. CSI Capital Management, Inc., is a financial services company and is nationally recognized as a leading provider of comprehensive and innovative financial services to professional athletes, entertainers and other high net worth clients. CSI Capital Management Inc., was incorporated under the laws of the State of California in 1978, as Career Sports International and subsequently changed its name to CSI Capital Management (hereinafter "CSI") with its principal place of business in San Francisco, California.

## DEFENDANTS

3. Prim Capital Corporation is an Ohio corporation. Prim Advisors, Inc., is an Ohio corporation and a SEC registered investment advisor, that is one of five operating units of Prim Capital Corporation. Prim Capital Corporation also has operating units: Prim Securities, Inc., a brokerage firm, Prim Agency, Incorporated, an insurance agency and Prim Real Estate, a real estate brokerage, and Prim Financial Services, Incorporated, a full-service accounting, financial planning and financial management firm. Prim Capital and Prim Advisors (referred to collectively as "Prim") maintain their principal place of business in Ohio. Prim conducts its business nationwide and has maintained facilities within California.

## JURISDICTION AND VENUE

4. This action is between Plaintiffs, a California resident and California corporation with its principal place of business in San Francisco, California, and Defendants, two Ohio corporations with their principal place of business in Ohio. The amount in controversy exceeds $75,000, and therefore, this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332. Venue is proper in this district pursuant to 28 U.S.C. §1391(c) because defendants are foreign corporations subject to in personum jurisdiction in this district.

2

COMPLAINT
Case No. _____
LV\CSI\P-Complaint#2

## FACTS

5. In the 1970's, the media reported numerous stories of professional athletes suffering large financial losses due to imprudent investing and abuse by their financial advisors and the consultants. Faust determined to bring a new service to the financial world of professional athletes: honest, serious, and competent investment advice and tax planning.

6. In 1978, Faust started Career Sports International (hereinafter "CSI") the precursor to CSI Capital Management, Inc., to provide legitimate financial management and advice to professional athletes.

7. By the mid-1980's Faust had developed a national reputation for providing excellent financial management services to professional athletes. Additionally, during the 1980's, Faust and CSI rescued several high profile athletes from financial ruin. Faust and CSI's successes in providing honest competent financial services to professional athletes and their successes in "rescuing" clients from financial disaster resulted in Faust and CSI being identified nationally as the leading provider of honest competent financial advice to the sports industry. Faust and CSI were the subject of numerous complimentary media articles. Faust was accurately portrayed as a financial services provider of the highest integrity who provided unsurpassed services to his clients and who, by looking after his clients' best interest, was the antidote to the scandalous experiences many athletes had with financial services providers.

8. CSI, as a direct result of its good performance and national reputation, grew in the 1990's to servicing over 150 professional athlete clients. Additionally, Faust has been consulted by sport institutions like the Major League Baseball Players Association and the National Football League Players Association regarding financial matters. By 1994, Faust was recognized by the Sporting News as one of the 100 most powerful people in sports.

9. Part of CSI's services to its clients is directing the clients' investment into a diversified group of publicly traded securities. As CSI's client base grew, CSI realized that an organized structure of the clients' equities would allow economies of scale which would inure to its clients' benefit. CSI acted on its realization by organizing CSI Equity Fund in 1997, a mutual fund. Some CSI clients have invested in the CSI Equity Fund. Like any mutual fund, CSI

3

COMPLAINT
Case No. _____
LV\CSI\P-Complaint#2

Equity Fund has fee provisions built into its structure. CSI, to insure that the advantages of the economies of scale inure to its clients' benefit, deducts the management fees it receives from the mutual fund from the fees the clients pay directly to CSI for its management services.

10.  Consistent with CSI's history of excellent results from investments, CSI Equity Fund has been hugely successful, ranking in the top 10% of mutual funds in its category for its investment performance over the last five years, and currently carries a five star rating from Morningstar, Inc., mutual fund rating service. Additionally, as a result of careful tax strategies followed by Faust and CSI, investors in CSI Equity Fund have not been taxed on much of the gains they enjoy from CSI Equity Fund. The success of CSI Equity Fund has added to the favorable reputation of CSI and Faust and resulted in national acclamation in such prestigious media as The New York Times, Barrons and The Wall Street Transcript, and in 2002 Barrons listed Faust as one of the top 100 mutual fund managers in the United States.

11.  In the financial world and the sports world Faust and CSI's reputations are virtually interchangeable.

### Prim's Plan

12.  Plaintiffs are informed and believe and thereon allege that Prim at some time prior to June 2002, the exact date of which is unknown to plaintiffs, developed a strategy to solicit professional basketball players as clients for its investment advisory services and the services provided by the other operating divisions of Prim Capital, Inc. Prim's marketing plan was to provide "free audits" of player's financial affairs in which Prim would critique the performance and fees of the player's current advisors and suggest techniques for improving the player's financial performance. Prim's plan called for Prim to provide the "audit" at no charge. Plaintiffs are informed and believe and thereon allege that Prim expected to make money only if the audited player chose to retain Prim's services after the audit.

13.  Prim's marketing plan allowed Prim access to the player, allowed Prim to demonstrate its purported expertise to the player and ingratiate itself with the player because Prim provided the audit for free.

4

14. The key to Prim's marketing, however, was prevailing on G. William Hunter, Executive Director of the National Basketball Players Association, the players' union for the National Basketball Association, to embrace Prim's "free" audits as a service to the union members.

15. Sometime before June 2002, Hunter apparently agreed to assist Prim with access to the NBA players by organizing team meetings of each NBA franchises team where Prim was allowed to present the availability of its audit services to the players. Plaintiffs do not know the exact time or the circumstances under which Prim and Hunter came to their agreement.

16. Commencing in 2002 and continuing to the filing of this Complaint, Prim has pursued its plan of marketing itself via its free audit program, has presented the idea to all NBA players and is auditing players' financial portfolios.

17. Pursuant to its marketing program, Prim has been able to audit the financial circumstances of several NBA players including CSI clients. In conjunction with its marketing plan, Prim has acted fraudulently, by failing to disclose material facts, making false statements and stating opinions in context to be understood as statements of fact.

### Prim's Fraud and Slander

18. Plaintiffs are informed and believe and thereon allege that Prim has failed to disclose either to Hunter or to the NBA players it solicits for audits the following facts that either Hunter or the players would certainly have wanted to know before placing their trust and confidence in Prim:

    a. Prim has falsely stated in national media that it was hired "by the National Basketball Players Association to provide audits to NBA Players."

    b. Prim's "free audit" program is really a marketing program disguised as a service to the players;

    c. Prim's purpose in its audits is to denigrate the player's existing financial advisors and obtain confidential information so that the player will retain Prim;

    d. Anthony Delfre, an owner and Vice President of Prim, and one of the primary auditors, has been sued for misappropriation of confidential financial information in order to obtain new clients after he left Merrill Lynch, Pierce, Fenner & Smith Inc., brokerage firm and he was allowed to resign from Prudential Securities, Inc., brokerage for making unauthorized payments to third parties;

    e. Joseph Lombardo, President and CEO of Prim Capital Corporation, and an indirect owner of Prim Advisors, has several judgments against him in his home state of Ohio;

    f. That Prim Capital Corp. has several judgments outstanding against it in Ohio;

    g. That Prim has a conflict of interest in purporting to provide objective audits for players because of Prim's goal of obtaining the players as clients; and

    h. That Prim as recently as December 2001, was found liable in an NASD proceeding alleging fraudulent activities, resulting in an award of $193,000 against Prim Securities, Inc.

19. In addition to failing to disclose material facts Prim representatives have made numerous false statements to the public or to CSI clients in March 2003:

    a. Prim representative, Anthony Delfre told Ty Eisley, a CSI client, that she and her husband had been "overcharged" by CSI for its services. Delfre's statement is readily understood to mean that CSI and Faust were improperly charging excessive fees. Delfre's statement effectively charged CSI and Faust with dishonesty;

    b. Prim representative Anthony Delfre told Ms. Eisley that CSI's representations regarding tax savings were untrue; that there was "no possible way they saved on taxes"; and that CSI's representations of tax savings simply were "not the case." Delfre's statements are readily understood to mean either that CSI and Faust lied to Ms. Eisley regarding tax savings, or were so incompetent that CSI did not recognize that the asserted tax savings did not exist;

    c.   Prim representative Anthony Delfre told Ms. Eisley that "CSI does not want to cooperate with the audit." Delfre's statement is readily understood to mean that CSI and Faust refuse to follow their clients' directions and are reluctant to allow Prim to review documents because CSI and Faust need to hide the truth;

    d.   Prim representative Joseph Lombardo is reported in industry trade paper, *Street & Smith's Sports Business Journal*, as saying players are invested in mutual funds owned by the players' financial advisors, in a context communicating that such investments are improper, unethical and may be illegal. Lombardo's statements are readily recognized as referring to CSI and Faust because CSI and Faust are well known to have directed clients investments into the highly successful CSI Equity mutual fund;

    e.   Prim representative, Joseph Lombardo is also reported in the *Street & Smith's* article, that players are paying advisors as much as 1.5 per cent of their pretax salaries when the industry standard is to pay an hourly rate. Lombardo's comment in the context of the entire article communicates that advisors who did not charge by the hour are not following industry standard and are charging exorbitant fees. CSI does not charge its clients on an hourly basis;

    f.   Lombardo is quoted in the *Street & Smith's* article as stating "We [Prim] do not manage their [players] money and we do not sell them any [financial] products at all." In the context of the Street & Smith's article this statement communicates that Lombardo's opinions and statements should be accepted as credible and true because he is an objective outside observer of the matters upon which he commented. Lombardo's statement is false, in that Prim has been retained by players, including one CSI client, who left CSI to go to Prim.

20.   Each of the statements made by Prim representatives as alleged in Paragraph 19 is false.

---

7

COMPLAINT
Case No. _____
LV\CSI\P-Complaint#2

## FIRST CAUSE OF ACTION
### (CSI's Claim for Slander Against All Defendants)

21. Plaintiff CSI by this reference incorporates each and every allegation of Paragraphs 1 through 20, inclusive of this Complaint.

22. Each of the statements by defendants as alleged with particularity in Paragraph 19 is false and defamatory because the statements tend to impugn CSI's integrity and competence which naturally tends to injure CSI in its business as a fiduciary and financial manager.

23. As a proximate and direct result of defendants' defamatory statements CSI has been injured in its business.

24. Plaintiff CSI is informed and believes and thereon alleges that defendants made the alleged false defamatory statements knowingly, intentionally, fraudulently, and maliciously in order to injure CSI in its business.

25. As a result of defendants' defamatory statements, CSI has been injured in an amount to be proved at trial.

26. Defendants' fraudulent and malicious activities justify and award of exemplary and punitive damages in an amount to be proved at trial.

## SECOND CAUSE OF ACTION
### (Faust's Claim for Slander Against All Defendants)

27. Plaintiff Faust by this reference incorporates each and every allegation of Paragraphs 1 through 20, inclusive of this Complaint.

28. Each and every of the statements by defendants as alleged with particularity in Paragraph 19 is false.

29. Each of the statements by defendants as alleged with particularity in Paragraph 19 is false and defamatory because the statements tend to impugn Faust's integrity and competence which naturally tends to injure Faust in his business as a fiduciary and financial manager, and therefore in violation of California Civil Code Section 47.

30. As a proximate and direct result of defendants' defamatory statements Faust has been injured in his business.

31. Plaintiff Faust is informed and believes and thereon alleges that defendants made the alleged false defamatory statements knowingly, intentionally, fraudulently, and maliciously in order to injure Faust in his business.

32. As a result of defendants' defamatory statements, Faust has been injured in an amount to be proved at trial.

33. Defendants' fraudulent and malicious activities justify an award of exemplary and punitive damages in an amount to be proved at trial.

### THIRD CAUSE OF ACTION
(CSI's Claims Against All Defendants for
Interference with Prospective Economic Advantages)

34. Plaintiff CSI by this reference incorporates each and every allegation of Paragraphs 1 through 33, inclusive of this Complaint.

35. Plaintiff CSI's business and professional athletes are predicated on its reputation for integrity and excellent performance.

36. Plaintiff CSI is informed and believes and thereon alleges that it has lost one client as a proximate and actual result of defendants' wrongful activities, and that plaintiff is losing additional potential clients due to the defendants' unlawful activities as alleged herein.

37. As a proximate and direct result of defendants' unlawful interference with CSI's legitimate business opportunities by its fraudulent and defamatory statements CSI has been injured in its business.

38. As a result of defendants' unlawful interference with CSI's business opportunities, CSI has been injured in an amount to be proved at trial.

39. Plaintiff CSI cannot know the full extend of damages it has suffered and will suffer due to defendants' wrongful activity and damages do not afford plaintiff adequate relief and defendants should be restrained from any further wrongful interference with plaintiffs' business.

9

COMPLAINT
Case No. _____
LV\CSI\P-Complaint#2

40. Plaintiff CSI is informed and believes and thereon alleges that defendants have interfered with CSI's business opportunities knowingly, intentionally, fraudulently, and maliciously in order to injure CSI in its business.

41. Defendants' fraudulent and malicious activities justify and award of exemplary and punitive damages in an amount to be proved at trial.

## FOURTH CAUSE OF ACTION
### (CSI's Claims Against All Defendants for Violating B&P §1700)

42. Plaintiff CSI by this reference incorporates each and every allegation of Paragraphs 1 through 41, inclusive of this Complaint.

43. Plaintiff CSI's business and professional athletes are predicated on its reputation for integrity and excellent performance.

44. Defendants' unlawful conduct as alleged herein, constitutes unlawful business practice in violation of B&P Code Section 17200.

45. As a proximate and direct result of defendants' defamatory statements CSI has been injured in its business and the public has been mislead.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

For Plaintiff CSI:

1) General and special damages according to proof;

2) Exemplary and punitive damages according to proof;

3) An order enjoining defendants and each of them from any further unlawful conduct as proved at trial;

4) Attorney fees and costs;

5) And such other and further relief as the Court deems appropriate.

10

COMPLAINT
Case No. _____
LV\CSI\P-Complaint#2

For plaintiff Leland Faust:

1) General and special damages according to proof;

2) Exemplary and punitive damages according to proof;

3) Attorney fees and costs;

4) And such other and further relief as the Court deems appropriate.

DATED: April 1, 2003              LAW OFFICES OF PHILIP SCOTT RYAN

                                  KING & KELLEHER, LLP


                                  By _____
                                       Edward Vincent King, Jr.

                                  Attorneys for Plaintiffs
                                  CSI CAPITAL MANAGEMENT, INC. and
                                  LELAND FAUST


## DEMAND FOR JURY TRIAL

Plaintiffs CSI Capital Management, Inc., and Leland Faust hereby demand trial by jury.

DATED: April 1, 2003              LAW OFFICES OF PHILIP SCOTT RYAN

                                  KING & KELLEHER, LLP


                                  By _____
                                       Edward Vincent King, Jr.

                                  Attorneys for Plaintiffs
                                  CSI CAPITAL MANAGEMENT, INC. and
                                  LELAND FAUST

---

11

**COMPLAINT**
Case No. _____
LV\CSI\P-Complaint#2